FILED
SUPERIOR COURT
OF GUAM

2021 DEC -3 AM 11: 44

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0177-21 |
| vs. | DECISION AND ORDER |
| RUDY FEGURGUR QUINATA, | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on November 12, 2021, for hearing on Defendant **RUDY FEGURGUR QUINATA'S** ("Defendant") Motion to Suppress Evidence. Present were Defendant with counsel, Assistant Alternate Public Defender Peter J. Santos, and Assistant Attorney General Leonardo M. Rapadas on behalf of the People of Guam ("the Government").[1] Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On April 13, 2021, a grand jury indicted Defendant on the charges of (1) Murder (As a First Degree Felony) and (2) Aggravated Assault (As a Second Degree Felony).[2] (Indictment,

---

[1] Co-Defendant Joyner Scott Sked was also present at the hearing with counsel, Terrence E. Timblin. Co-Defendant Sked did not join the instant motion, nor did her counsel ask any questions to the testifying witness at the Motion Hearing.

[2] These charges are reflected as the Third Charge and Fourth Charge in the Indictment. The First Charge and Second Charge in the Indictment refer to co-defendant Joyner Scott Sked.

---

Apr. 13, 2021). The Indictment also charges co-defendant Joyner Scott Sked with (1) Murder (As a First Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon and Aggravated Assault (As a Second Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon. *Id.* These charges stem from allegations that the defendants caused the death of Mr. Daniel Quinata Sanchez on or between the period of April 1, 2021 to April 3, 2021. *Id.* Mr. Sanchez was found lying on the floor, facedown, with blood on the floor around his body in a residence either owned or occupied by Defendant Quinata and frequented by Co-Defendant Sked. (Decl. of Jeremiah B. Luther, Magistrate's Compl., Apr. 5, 2021).

On August 16, 2021, the court severed Co-Defendant Sked from this matter, thereby creating CF0177-21-01. Jury Selection and Trial is currently set to commence for Ms. Sked on December 15, 2021.

On August 13, 2021, Defendant filed the instant Motion to Suppress. On August 27, 2021, the Government filed its Opposition.

On October 12, 2021, this matter was assigned to this Court.

On November 12, 2021, the Court heard sworn testimony from Guam Police Department Detective Eric Barcinas ("Detective Barcinas"). At the conclusion of the hearing, the Court gave the parties leave to file proposed findings of fact and conclusions of law based on the testimony elicited at the hearing. The Court has not received any proposed findings from either party.

At the Suppression Hearing, the Court ascertained the following facts:

1. On April 3, 2021, Detective Barcinas was tasked to assist with an expired person investigation and criminal trespassing complaint.

2. Detective Barcinas was informed that officers from the Southern Precinct Command conducted a welfare check at a residence belonging to Defendant. When officers arrived, they conducted the welfare check and discovered a lifeless body within the residence. Guam Fire Department was called, and the body was identified as Mr. Sanchez.

3. Detective Barcinas was tasked to interview Defendant. Detective Barcinas and Detective J.J. Mendiola proceeded to the Central Precinct to meet with Defendant who had been taken into custody.

4. Upon arrival, Detective Barcinas informed Defendant why they were meeting with him. Defendant uttered some statements in reference to the investigation, without any questions being asked. Defendant stated that it wasn't his fault, it was Joyner Sked.

5. Detective Barcinas immediately advised him of his rights verbally in the presence of Detective Mendiola and a processing officer.

6. Defendant then made further statements indicating that he wanted a lawyer.

7. Detective Barcinas testified that no further questions were asked, and that he informed Defendant that he would be transported to the Criminal Investigation Section ("CIS") office in Tiyan.

8. While transporting Defendant to the office, Defendant made further statements. Detective Barcinas testified that he did not ask Defendant any questions, and again verbally advised him of his rights.

9. Detective Barcinas testified that he did, however, inquire whether Defendant would be willing to take a breathalyzer test. Detective Barcinas testified that he was informed that officers who took Defendant into custody indicated Defendant might be intoxicated.

10. Defendant agreed to take the breathalyzer test. Detective Barcinas testified that Defendant's blood alcohol content was below 0.08. Detective Barcinas further testified that Defendant did not appear to be intoxicated.

11. After the breathalyzer test was completed, Defendant was taken to an interview room at CIS. Detective Barcinas, using a standard GPD rights form, formally advised Defendant of his rights. Defendant indicated that he understood all his rights by initialing and writing yes next to each sentence. However, at the bottom of the form

under the paragraph as to whether Defendant would be willing to provide a statement, Defendant declined to sign. Defendant requested for a lawyer.

12. Detective Barcinas testified that he took Defendant's demographic information: name, residence, height, weight, contact number, and social security number. Detective Barcinas testified that those were the only questions that he asked Defendant, and that it maybe took two to three minutes to get the information.

13. Detective Barcinas testified that Defendant made further statements relative to the investigation in between the demographic questioning and afterwards, even though he was not asked any questions about the incident or what happened.

14. Defendant made statements about him and Ms. Sked going to Barrigada to meet with a friend of Ms. Sked, describing the residence, that he was at a residence to get water, and that he later couldn't find Ms. Sked. Defendant also made statements about observing unmarked police cars and that he wanted to call police to turn himself in, but didn't elaborate.

15. Detective Barcinas testified that when Defendant told him these things, he tried to refrain him from talking, reminding Defendant that he had requested for a lawyer and that he was not asking him any questions. Detective Barcinas testified that he advised verbally "Mr. Quinata you don't have to talk to me. You asked for a lawyer, you have the right to remain silent."

16. Detective Barcinas testified that Defendant appeared calm and was not aggressive. When asked further about Defendant's state of mind regarding whether Defendant appeared to be emotional or mentally unstable, Detective Barcinas could not provide any additional information, but indicated Defendant was not crying.

17. Detective Barcinas testified that when Defendant asked for an attorney, he inquired whether he had an attorney.

18. Detective Barcinas testified that upon a defendant requesting for an attorney, it is protocol for CIS to cease any investigation with the defendant and wait for a

Magistrate's Hearing, unless the defendant has an attorney on retainer who can be called.

19. Detective Barcinas testified that because Defendant requested an attorney and he could not question him beyond the booking information, he arrested Defendant for the charges in this matter.

## DISCUSSION

Defendant moves the Court to suppress any statements made by Defendant because he was in custody and was not advised of his Miranda rights, and to suppress any statements made after he requested counsel because he was denied the right to counsel. *See generally*, Mot. Suppress, Aug. 13, 2021. The Government does not dispute that Defendant was in custody or that Defendant requested an attorney, but argues that Defendant was not interrogated, and that Defendant said nothing that incriminated himself, only his co-actor Joyner Sked, and that he further volunteered unrelated statements about what he did that evening with and without Joyner Sked. (Opp'n at 3-4, Aug. 27, 2021).

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, and is applicable to Guam through the Organic Act. *See* 48 U.S.C.A. § 1421b(d). "[S]uspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (citations omitted).

"The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel." *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010). "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona,* 451 U.S. 477, 484 (1981). "An accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the

authorities until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85. "[O]nce the assertion of the right to counsel is exercised by the accused, the interrogation must cease until an attorney is present." *Id.* at 485.

"An interrogation is said to occur when the defendant, in custody, is the target of questions or statements, which the police can expect will elicit incriminating responses." *People v. Farata*, 2007 Guam 8 ¶ 36 (citation omitted). "[T]he term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* (citation omitted). An incriminating response is any response - whether inculpatory or exculpatory - that the *prosecution* may seek to introduce at trial. *Id.* (citation and quotation marks omitted) (emphasis in original).

In this case, there is no dispute that Defendant was in custody at the time he made statements to Detective Barcinas. Detective Barcinas testified that he advised Defendant of his *Miranda* rights orally and via the GPD rights form. Detective Barcinas further testified that he did not ask Defendant any questions about the incident, as Defendant advised that he wanted an attorney. Detective Barcinas testified that he only asked Defendant standard booking questions, and that any statements made by Defendant were volunteered and "blurted out" by Defendant without any prompting or questioning. Based on Detective Barcinas's testimony, the Court does not find that Defendant was interrogated about the incident or that Detective Barcinas utilized any words or actions he knew or reasonably likely knew would elicit an incriminating response. *See Edwards,* 451 U.S. 477 at 485-86 ("The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right . . . invoked."). The Court finds that questions asked by Detective Barcinas in a short period of time as to Defendant's demographic information (name, residence, height, weight, contact number, and social security

number) were reasonably described for booking and not for investigative purposes. Therefore, the Court will not suppress the statements made by Defendant to Detective Barcinas.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress Evidence. Jury Selection and Trial for this matter will be set after the completion of trial for co-defendant Joyner Sked.

**IT IS SO ORDERED** this 3rd day of December, 2021.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam